UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARMEN KELLY,

       Plaintiff,                                    Hon. Paul L. Maloney

v.                                                       Case No. 1:07-CV-624

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age at the time of the ALJ's decision. (Tr. 22, 52). She possesses a General Equivalency Diploma (GED) and worked previously as a certified nurse's assistant, fast food worker, assembler, and telemarketer. (Tr. 64-68, 74, 79).

Plaintiff applied for benefits on March 5, 2003, alleging that she had been disabled since February 15, 2002, due to anxiety, depression, and obsessive-compulsive disorder. (Tr. 52-54, 73, 444-46). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 23-51, 447-72). On September 14, 2006, Plaintiff appeared before ALJ Thomas English, with testimony being offered by Plaintiff and vocational expert, Donald Hecker. (Tr. 473-95). In a written decision dated November 22, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 16-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-7). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2005. (Tr. 18); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**RELEVANT MEDICAL HISTORY**

On January 31, 2001, Plaintiff was examined by Dr. Willie Harris at Summit Pointe Behavioral Health Resources. (Tr. 193-96). Plaintiff stated, "I need a psychiatrist to prescribe my medications and help me with therapy." (Tr. 193). Plaintiff reported that she was presently working as a housekeeper. (Tr. 194). Plaintiff reported experiencing anxiety and compulsiveness, including hair-pulling, theft, and "excessive shopping." (Tr. 194). She reported having been imprisoned twice for "writing bad checks." (Tr. 194). Plaintiff also reported "a crack cocaine addiction for ten years and alcohol abuse in her earlier years." (Tr. 194). Plaintiff exhibited no evidence of psychotic or delusional thoughts and she denied feelings of hopelessness, helplessness, or suicidal ideation. (Tr. 194). Plaintiff exhibited "broad" affect and her memory was "intact." (Tr. 194).

Dr. Harris diagnosed Plaintiff with: (1) history of major depression, recurrent; (2) history of polysubstance abuse, alcohol and cocaine; and (3) trichotillomania.[1] (Tr. 195). Plaintiff's GAF score was rated as 50.[2] (Tr. 195). The doctor concluded that Plaintiff "indeed needs therapy" and medication because "there are multiple unresolved issues with her." (Tr. 195). Dr. Harris also reported that

> One can not exclude bipolar affective disorder with this client but I am doubtful of the above. I am also concerned if her impulsive behavior is secondary to substance abuse even though she stated she is not using. One must still be suspicious that she might have restarted using narcotics and is demonstrating impulsive behavior and

---

[1] Trichotillomania is an impulse control disorder in which the person experiences an "irresistible desire to pull out their hair, whether it's from their scalp, their eyebrows or other areas of their body." *See* Trichotillomania, available at http://www.mayoclinic.com/health/trichotillomania/DS00895 (last visited on July 14, 2008).

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

>   antisocial behavior such as stealing from the malls. I do not want this
>   client to give the symptoms of bipolar disorder for secondary gains
>   and I will watch her closely.

(Tr. 195).

Plaintiff failed to attend six scheduled therapy sessions between February 28, 2001, and August 23, 2001. (Tr. 182, 184-87, 192).

On September 5, 2001, Plaintiff met with Dr. Harris. (Tr. 181). Plaintiff exhibited "broad" affect and "euthymic" mood. (Tr. 181). Her insight and judgment were "intact." (Tr. 181). Plaintiff reported that she was experiencing "some semi-depression" and "some obsessional thoughts," but that such were "better" with medication. (Tr. 181). The doctor modified Plaintiff's medication regimen. (Tr. 181).

On October 23, 2001, Plaintiff met with a therapist at Summit Pointe. (Tr. 173-77). The therapist reported that Plaintiff was "on probation for assault and battery" and that this was "court ordered counseling for anger management and parenting." (Tr. 176). Plaintiff reported that her anxiety, depression, and obsessive/compulsive behaviors were "better" with medication. (Tr. 173). The results of a mental status examination were unremarkable. (Tr. 175-76). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent; and (2) polysubstance dependence. (Tr. 177). Plaintiff's GAF score was rated as 58.[3] (Tr. 177).

Treatment notes dated November 1, 2001, reveal that Plaintiff had "a confrontation with a retail security officer." (Tr. 171). Plaintiff bit the security guard so severely that his wound required "staples." (Tr. 171).

---

[3] A GAF score of 58 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

On January 8, 2002, Plaintiff met with a therapist at Summit Pointe. (Tr. 168). The therapist reported that Plaintiff "does not go to NA" and "has not been to counseling since Nov. 2001." (Tr. 168). Plaintiff reported that she did not want to attend anger management class because it cost fifteen dollars per session. (Tr. 168). On January 15, 2002, Plaintiff began a job at Tender Care working third shift. (Tr. 167). On March 1, 2002, Plaintiff reported that she "likes her job and is thinking of going to school in [the] future for LPN." (Tr. 166).

On February 25, 2003, Plaintiff met with Dr. Georgina Rao at Summit Pointe. (Tr. 161-62). Plaintiff reported that she was "doing pretty good" and that she was presently taking three classes at Kellogg Community College. (Tr. 161). Plaintiff reported that she had not used any drugs or alcohol since the previous July. (Tr. 161). Plaintiff exhibited euthymic mood, her judgment and insight were "intact," and her thought process was "linear and goal directed." (Tr. 162). The following month, Plaintiff resumed using crack cocaine and continued to do so through August 2003. (Tr. 419).

On October 5, 2003, Plaintiff participated in a consultive examination conducted by Timothy Strang, Ph.D. (Tr. 198-202). Plaintiff reported that from "time to time" she forgets to take her psychotropic medication. (Tr. 199). Plaintiff appeared dysphoric, but the results of a mental status examination were otherwise unremarkable. (Tr. 200-01). Plaintiff was diagnosed with: (1) depressive disorder; (2) cocaine abuse, early full remission; (3) kleptomania; and (4) trichotillomania. (Tr. 201). Her GAF score was rated as 45.[4] (Tr. 201). Dr. Strang recommended that Plaintiff "continue her treatment at Summit Pointe." (Tr. 201).

---

[4] A GAF score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

Plaintiff was in jail from January 29, 2004, through August 16, 2004, for shoplifting, probation violation, writing bad checks, and possessing drug paraphernalia. (Tr. 368). Plaintiff later reported that she was "off all meds" during this time. (Tr. 305). Treatment notes, however, indicate that Plaintiff's family delivered her medication to the jail. (Tr. 356).

On October 19, 2004, Plaintiff was "booked in" the Kalamazoo County Jail, at which time she reported that she had not taken her medication in one and one-half months. (Tr. 356). The record does not indicate how long Plaintiff remained in custody. On December 30, 2004, Plaintiff resumed taking her psychotropic medications. (Tr. 305).

On January 24, 2005, Plaintiff met with Dawn Vollink at Summit Pointe. (Tr. 366-72). Plaintiff was "friendly" and "cooperative." (Tr. 370). The results of a mental status examination were unremarkable. (Tr. 370). Plaintiff reported that she was presently taking classes at Kellogg Community College. (Tr. 369). Plaintiff reported that she was in therapy because "if she needs money and doesn't have it, she will steal." (Tr. 371). Vollink, however, reported that "it might seem she is otherwise motivated. . .because of being on probation and/or because it would look better to the courts connected to custody of her children.." (Tr. 371). Plaintiff was diagnosed with depressive disorder and her GAF score was rated as 53.[5] (Tr. 371). Thereafter, Plaintiff began regularly participating in therapy at Summit Pointe.

Treatment notes dated March 4, 2005, reveal that Plaintiff was "doing pretty well." (Tr. 300). On May 26, 2005, Plaintiff reported that she was earning "A's and B's" in school. (Tr. 374). Treatment notes dated June 10, 2005, reveal that Plaintiff "seems motivated for change" and

---

[5] A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

was "trying to keep on a straight path." (Tr. 376). Treatment notes dated June 24, 2005, reveal that Plaintiff was "making a good effort at keeping her life in balance" and was "trying to keep away from conflict." (Tr. 377). On July 8, 2005, Plaintiff reported that "her mood is stable" and she "is satisfied with how things are working out for her family." (Tr. 378). On September 22, 2005, Plaintiff reported that she "enjoys going to school." (Tr. 285).

Treatment notes dated December 6, 2005, reveal that Plaintiff was "focused on how she has made so many positive changes in recent years," but "recognizes that she still has room for improvement." (Tr. 383). Plaintiff reported that she "attends AA meetings, attends therapy and follows the requirements of her probation." (Tr. 383). The therapist reported that Plaintiff "does appear to be gaining insight" and that "when she sees a problem she is quicker to remedy it." (Tr. 383). She further noted that Plaintiff "has become more assertive and is setting better boundaries." (Tr. 383).

Treatment notes dated March 27, 2006, reveal that Plaintiff was "doing well," with no evidence of depression. (Tr. 387). Treatment notes dated April 6, 2006, reveal that Plaintiff was presently attending school on a full-time basis. (Tr. 384).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6]  If the Commissioner can make a

---

[6] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) affective disorders and (2) anxiety-related disorders. (Tr. 18). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ determined that despite these impairments, Plaintiff retained the ability to perform her past relevant work as an assembler. (Tr. 18-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As previously noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the physical capacity to perform light[7] work. (Tr. 19). With respect to Plaintiff's non-exertional impairments, the ALJ found that Plaintiff experiences mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 18-19). The ALJ concluded, therefore, that Plaintiff is capable of performing light work subject to the following restrictions: (1) she is limited to performing simple tasks with 1-3 step instructions, (2) she can only occasionally have interpersonal interaction with co-workers, and (3) she can have only brief and superficial contact with the public. (Tr. 19). After reviewing

---

[7] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

At the administrative hearing a vocational expert testified that Plaintiff, despite her limitations, retained the ability to perform her past relevant work as an assembler. (Tr. 491-92). The vocational expert further testified that even if Plaintiff were unable to perform her past relevant work, there existed approximately 38,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 492-93). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (evidence that there existed 2500 jobs "within the local region" represents a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (evidence that there existed 1350-1800 jobs "in the region" of the claimant's residence represents a significant number). Thus, substantial evidence supports the ALJ's decision to deny Plaintiff's claim at both step four and step five of the sequential disability evaluation process.

Plaintiff asserts a single issue on appeal. Specifically, she asserts that "there is no substantial evidence within the period of alleged disability which supports the Commissioner's decision that that the claimant has 'no impairment which significantly limits the claimant's ability to perform work-related functions.'" (Dkt. #8 at 4). Plaintiff's argument is based on the contention that the ALJ found "no evidence of emotional impairment." (Dkt. #8 at 4). In other words, Plaintiff asserts that there does not exist substantial evidence to deny her claim at step two of the sequential process identified above.

As detailed above, however, the ALJ specifically concluded that Plaintiff *did* suffer from severe emotional impairments, an affective disorder and an anxiety-related disorder. The ALJ

did not deny Plaintiff's claim at step two of the sequential process, but instead denied Plaintiff's claim at step four of the sequential process. The ALJ also concluded that Plaintiff's claim was also subject to denial at step five of the sequential process. Thus, Plaintiff's argument is without merit.

As the evidence reveals, Plaintiff abused crack cocaine for a significant period of time. During this time, Plaintiff was arguably impaired to an extent that prevented her from performing substantial gainful activity. However, where a claimant's drug or alcohol use constitutes a "contributing factor material to the determination of disability," benefits are not permitted. *See* 20 C.F.R. §§ 404.1535, 416.935; *Siemon v. Commissioner of Social Security*, 72 Fed. Appx. 421 (6th Cir., Aug. 15, 2003). As the record further reveals, however, once Plaintiff began to regularly participate in therapy and comply with her prescribed medication regimen, her impairments were not work preclusive, but instead limited her only to the extent recognized by the ALJ.

In other words, to the extent that Plaintiff was unable to perform work activities during the relevant time period, there exists substantial evidence that Plaintiff's drug usage was "a contributing factor material to" her inability to work. Thus, Plaintiff cannot receive disability benefits for such. The Court recognizes how difficult it can be to overcome drug addiction. Plaintiff is to be commended for her efforts to gain a measure of control over her life and obtain an education. Nonetheless, for the reasons discussed herein, the Court finds that the ALJ's decision in this matter is supported by substantial evidence.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 29, 2008

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge